UNITED STATES v. SPOKANE & I. E. R. CO.

(District Court, E. D. Washington, N. D. September 17, 1912.)

No. 1,261.

STREET RAILROADS (§ 73*)—SAFETY APPLIANCE ACT—"CARS USED ON STREET RAILWAYS."

Cars which are "used on street railways," excepted by Act March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1911, p. 1314), from the operation of Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by Act April 1, 1896, c. 87, 29 Stat. 85, are such cars only as are used solely on street railroads, and do not include cars of an interurban line, though they are also run on a street car line, or cars of the street railway line when run on the interurban line.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 153; Dec. Dig. § 73.*]

Action for penalties by the United States of America against the Spokane & Inland Empire Railroad Company. On motion of defendant for judgment notwithstanding the verdict. Motion denied.

Oscar Cain, U. S. Atty., and E. C. Macdonald, Asst. U. S. Atty., both of Spokane, Wash., and Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C.

Graves, Kizer & Graves, of Spokane, Wash., for defendant.

RUDKIN, District Judge. The present action was instituted by the United States attorney for this district, upon the suggestion of the Attorney General of the United States, and at the request of the Interstate Commerce Commission, to recover penalties for violations of the Safety Appliance Act of March 2, 1893, as amended by the acts approved April 1, 1896, and March 2, 1903, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]; 29 Stat. 85; 32 Stat. 943 [U. S. Comp. St. Supp. 1911, p. 1314]).

The complaint contains 15 causes of action in all, the first 12 for using in interstate commerce certain cars which were not provided with secure grabirons or handholds in the ends and sides of the cars for greater security of men in coupling and uncoupling the cars, as required by section 4 of the act, and the last 3 for permitting the hauling and using in interstate commerce of cars not equipped with couplers coupling automatically by impact, and which could be uncoupled without the necessity of men going between the ends of the cars, as required by section 2. The jury returned a verdict of guilty under the testimony as to the first 12 causes of action, and a like verdict, by direction of the court, as to the remaining 3 causes of action, and the defendant has interposed a motion for judgment notwithstanding the verdict. The sole ground of the motion is that that the cars in question were used upon street railways, within the meaning of the exception or saving clause embodied in the amendment of 1903, which exempts from the provisions of the act certain cars exempted by a prior amendment, "or which are used upon street railways." 32 Stat. 943, supra.

The claims of the respective parties may be thus briefly stated: The government contends that the saving clause excludes from the operation of the act only such cars as are used exclusively on street railways, or what might be styled street cars proper, while the defendant contends that all cars which are habitually operated over street railways are excluded, even though they are so operated for a small part of their journey only. This latter construction would, of course, exclude from the operation of the act practically all interurban trains, for it is conceded that such trains are usually, if not uniformly, operated over the street railways in the cities between which or through which they run. For the purposes of this opinion it would perhaps be a sufficiently definite description of the defendant's railway system to say that it differs in no respect from the interurban railways operated so extensively throughout the country. The company owns and operates a street railway system in the city of Spokane, and two or more interurban lines, one of which extends from the city of Spokane, in the state of Washington, to Cœur d'Alene City, in the state of Idaho, and is engaged in interstate commerce. The cars in question were hauled over this latter line. The passenger depot is in the heart of the city of Spokane, and passenger trains run from this depot over the street railway tracks to the private right of way of the company, a distance of a mile or more. From the latter point the trains run over the company's private right of way to Cœur d'Alene City, a distance of about 30 miles. The cars differ little from the passenger coaches

in common use on all commercial railways. They are usually operated in trains and run at a high rate of speed. . The trains run on schedule time, and their movement is controlled by train dispatchers and telegraphic orders in the customary way. Trains take up passengers at different points within the city destined to points without the city, and discharge passengers at different points within the city from points without the city, but carry no passengers between points within the city. The trains carry baggage as well as passengers, and freight trains are operated over the private right of way, but not as a rule on the street railway tracks.

The cars mentioned in the first 12 causes of action were the interurban cars in common use, while the cars mentioned in the last 3 causes of action were ordinary street cars, chained together and used on the interurban line in an emergency. For the purposes of the present motion it must be assumed that the first 12 cars were not provided with the grabirons or handholds required by the statute, and it is admitted that the last 3 cars were not equipped with automatic couplers. The object of the Safety Appliance Act is to protect those engaged in hazardous occupations in which thousands of men are annually maimed and killed, and there is nothing in the record to indicate that there is less hazard in the operation of an interurban train than any other. Indeed, the chief difference between the interurban train of the present day and the train operated over the steam railway lies in the motive power. Nor has any satisfactory reason been suggested why interurban roads cannot readily comply with all the requirements of the Safety Appliance Act, or why trains so equipped cannot operate over street railways, if need be. True, the grabirons or handholds cannot be placed beneath the cars now in use, as required by the order of the Interstate Commerce Commission made pursuant to the act of Congress of April 14, 1910 (36 Stat. 298 [U. S. Comp. St. Supp. 1911, p. 1327]), because the long swing of the drawbar in turning street corners will either break the handholds or grabirons from the car or throw the car from the track. But the order in question was not in force at the time of the use of the cars here complained of, and it is not to be presumed that the Interstate Commerce Commission will make regulations which are either unreasonable or unnecessary; and, if it has done so, it is not to be presumed that it will refuse to modify such regulations on proper application and showing. In any event, a regulation made by the Interstate Commerce Commission under an act passed in 1910 can have but little bearing on the construction of an act passed in 1903.

It was urged in argument that a great many interurban railways were under construction at the time of the passage of the act of 1903, and that Congress had such roads in view when it employed the expression, "used on street railways." It seems to me that if Congress had such roads in mind it would have described them more definitely than by referring to a mere incident to their main or principal use. The term "used" means "employed for a purpose," and imports a certain degree of permanence.

Section 7 of the act of Congress of March 3, 1851 (9 Stat. 636, c. 43), entitled "An act to limit the liability of shipowners and for other purposes," contained the following exception or saving clause:

"This act shall not apply to the owner or owners of any canal boat, barge, or lighter, or to any vessel of any description whatever, used in rivers or inland navigation."

And in construing the term "used" in Moore v. American Transportation Co., 24 How. 1, 16 L. Ed. 674, the court said:

"This word 'used' means, in the connection found, 'employed,' and doubtless, in the mind of Congress, was intended to refer to vessels solely employed in rivers or inland navigation."

So here Congress intended to exclude from the operation of the act such cars only as are used solely on street railways. This construction is reasonable and none too liberal. The exception or saving clause must be construed strictly, and no other construction will give full effect to the objects and purposes which Congress had in view. The first 12 cars mentioned in the complaint were therefore not used on street railways within the meaning of the law, and it is needless to say that street cars cannot lawfully be chained together and used for the purpose of carrying passengers in interstate commerce.

The motion for judgment notwithstanding the verdict is denied.